IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHEILA KLOET, | ) |
| | ) |
| Plaintiff, | ) No. 12 C 0192 |
| v. | ) |
| | ) Magistrate Judge |
| CAROLYN W. COLVIN,[1] | ) Maria Valdez |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff Sheila Kloet's ("Claimant" or "Kloet") claim for Supplemental Security Income and Disability Insurance benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Kloet's motion for summary judgment [Doc. No. 11] is granted in part and denied in part. The Government's motion for summary judgment [Doc. No. 19] is denied. The Court finds that this matter should be remanded to the Commissioner of Social Security for further proceedings.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as defendant in this suit.

## BACKGROUND

I. **PROCEDURAL HISTORY**

Kloet originally applied for Title II Disability Insurance Benefits on February 18, 2009. (R. 132.) In her application, she alleged disability beginning November 5, 2005, based on her bipolar disorder, post-traumatic stress disorder ("PTSD"), anxiety disorder, and chronic pain in her back and hips. (R. 132, 198–99.) Kloet's application was initially denied on July 2, 2009, (R. 81,) and upon reconsideration on November 23, 2009. (R. 89.) Kloet filed a timely request for a hearing by an Administrative Law Judge ("ALJ"), which was held on May 12, 2011. (R. 38.) She personally appeared and testified and was represented by counsel. (*Id.*) A vocational expert ("VE"), Lee Knutson, and a medical expert ("ME") Kathleen O'Brien, also testified at the hearing. (*Id.*)

On June 16, 2011, the ALJ found that Kloet was not entitled to benefits because she was not disabled under the Social Security Act. (R. 26.) The Social Security Administration Appeals Council denied Kloet's request for review on November 17, 2011, (R. 1–5,) leaving the ALJ's decision as the final decision of the Commissioner of Social Security and therefore reviewable by the District Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND

### A. Kloet's Personal History

Kloet was born on June 19, 1964. (R. 132.) She graduated from high school and attended two years of nursing school. (R. 180.) Kloet lives in a town home with her husband her two sons. (R. 40, 209.) Prior to her injuries, she worked in schools as a health aide, and a lunch room supervisor. (R. 171.) She has also previously worked as an EMT. (*Id.*)

### B. Testimony and Medical Evidence

#### 1. Claimant's testimony

Kloet testified that she had surgeries on her hips and neck in October, 2008 and January, 2009. (R. 41.) She injured her back working with children and has a bulging disc at vertebrae L5-S1. (R. 43.) Kloet takes several medications for various ailments, including Lexapro, Seroquel, Metformin and a gastric drug. (R. 45.)

Kloet spends much of her time secluded in her home. (R. 46.) She has bipolar disorder and suffers from bouts of severe anxiety and depression. (R. 48.) Although Kloet is able to drive, her husband drives her children to and from school because of her mental health issues. (R. 44, 46) Her husband also does most other household chores. (R. 46, 52.) Some days, Kloet feels so overwhelmed that she does not leave her bed. (R. 48.)

Because of her problems with bipolar disorder, Kloet experiences cycles of mania lasting between 24 and 72 hours. (R. 49.) She suffers from post-traumatic stress syndrome stemming from abuse by her first husband and from a random assault by a man wielding a baseball bat. (R. 50–51.) The assault left her afraid to go anywhere by herself. (R. 51.) She occasionally hallucinates that she is hearing voices and frequently has paranoid thoughts. (R. 52.) A counselor has been working with Kloet to treat tendencies associated with obsessive compulsive order. (R. 54.)

### 2. Medical evidence

On June 2, 2008, Dr. Stephen Penepacker, Kloet's treating psychiatrist, wrote a letter in support of her application for Social Security benefits, citing her difficulties with bipolar disorder and PTSD. (R. 1000.) Dr. Penepacker noted that Kloet had recently stabbed herself in the rectum with a knife. (*Id.*) Notes from follow up visits on August 22, 2008; October 21, 2008; and January 30, 2008 report mental status evaluations featuring normal results, but indicate that Kloet behaved erratically and described having paranoia and hallucinations during those visits. (R. 1341, 1371–76.)

Dr. Penepacker's April 10, 2009 examination of Kloet indicated that her mood, behavior, and ability to maintain concentration and interact were at normal levels. (R. 1420.) On November 5, 2009, Kloet reported to Dr. Penepacker that she was "okay." (R. 2074.) In March, 2010, Kloet was assaulted by a stranger who had broken into her house. (R. 2053.) She reported to Dr. Penepacker on April 8, 2010 that the experience left her feeling "horrible," with suicidal thoughts, frequent

4

migraines, and memory problems. (*Id.*) Notes from Kloet's February 22, 2011 visit to Dr. Penepacker, showed a mix of problems and progress, describing frequent panic attacks, but suggesting that her condition had improved to the point that she could take care of her father. (R. 2274.) On April 15, 2011, Dr. Penepacker wrote a letter concerning Kloet's residual functional capacity ("RFC") stating his opinion that she could work 40 hours per week due to her problems with anxiety and bipolar disorder. (R. 2449–50.)

Records of Kloet's physical ailments show that she reported back pain, neck pain, and headaches in July of 2008, but examinations showed limited degenerative disc disease and mild impingement. (R. 1296.) CT scans taken of Kloet's head and neck on May 6, 2009 after Kloet was in a car accident were both negative. (R. 1495.) During hospital visits in May and June, 2009, Kloet complained of headaches, dizziness, and neck pain. (R. 1474–75, 1485, 1817.) She underwent neck surgery to fuse her C5-C6 vertebrae on August 6, 2009. (R. 2120.) Kloet was discharged from care on September 10, 2009 after her symptoms improved markedly following surgery. (R. 1869.)

On October 28, 2010, Kloet underwent right hip core decompression surgery, following months of hip pain. (R. 2237.) The surgery was successful, and as of December 2, 2010, she had little residual pain in her right hip. (R. 2126.) She underwent left hip core decompression surgery on January 10, 2011. (R. 2223.) Testing done on January 25, 2011 showed that the surgery was also successful. (R. 2158.)

5

A June 1, 2009 consultative medical examination by Dr. Mahesh Shah noted mild tenderness and decreased range of motion in Kloet's cervical spine. (R 1461.) Shah also listed Kloet's problems with neck pain, diabetes, colitis, venous thrombosis, and mental difficulties, noting that her mild obesity could exacerbate those problems. (R. 1462.)

### 3. Medical expert's testimony

Based on her examination of Kloet's medical records, the ME testified that Kloet has diagnosed bipolar disorder, but that her records are more reflective of depressive disorder. (R. 58.) The ME also noted Kloet's post-traumatic stress disorder. (*Id*.) She determined that Kloet has moderate difficulties with activities of daily living, moderate difficulties with social interaction and mild to moderate difficulties with concentration, persistence, or pace. (R. 56–57.) As a result, the ME suggested that Kloet's RFC would be limited in a work environment such that she should have no public contact and should only have occasional interaction with peers and supervisors. (R. 57.) The ME stated that Kloet could not do fast past work and that her work should be limited to simple, unskilled tasks. (*Id*.)

The ME opined that Kloet's episodes of mania and depression would not cause her to be absent from work, citing evidence from the medical record indicating that Kloet's bipolar disorder was "well controlled." (R. 59–61.) The ME also based her conclusions on a mismatch between subjective descriptions of serious ailments Kloet relayed to Dr. Penepacker, and less extreme objective impressions in his notes. (R. 61–62.)

6

### 4. Vocational expert's testimony

The VE assessed Kloet's case based on her medical records, concluding that her RFC would allow her to: (1) lift 20 pounds occasionally and 10 pounds frequently; (2) never climb ladders or scaffolding; (3) sit for six hours out of an eight hour day; (4) never interact with the public and occasionally interact with peers and supervisors; (5) not engage in fast paced work; and (6) perform only simple unskilled tasks. (R. 65–66.) Based on these limitations, the VE concluded that Kloet could not work in jobs she held previously. (R. 66.) However, the VE stated that Kloet could work in other light, unskilled jobs available in the regional economy, including as a non-postal service mailroom clerk (approximately 1,600 jobs available), as an unskilled cleaner (15,000 jobs), or as an office helper (14,500 jobs). (*Id.*) Asked whether a person with Kloet's RFC could also miss three days of work per month and still keep her job, the VE replied missing so many days would render that person unemployable. (R. 70.) The VE additionally reported that a person who was off task more than 15 percent of the time would be terminated by a typical employer. (*Id.*)

### C. ALJ Decision

The ALJ found that Kloet had not engaged in substantial gainful activity since the time of her initial onset date of June 1, 2008. (R. 21.) He also found that Kloet suffered from severe impairments, including bipolar disorder and PTSD. (*Id.*) He concluded that none of Kloet's impairments met or equaled a medically determinable impairment listed in 20 C.F.R. Part 404. (R. 21–22.)

The ALJ next determined that Kloet had the RFC to perform simple, unskilled light work, provided that she was kept from contact with the public and had no more than occasional contact with supervisors and coworkers, and so long as she was in a slow paced work environment. (R. 22.) In his conclusions regarding Kloet's RFC, the ALJ found that while Kloet's medically determinable impairments might cause her alleged symptoms, Kloet's statements concerning the intensity, persistence, and limiting effects of her ailments were "not fully credible." (R. 24.) Specifically, the ALJ cited evidence of improvements in Kloet's mental state from psychiatric progress notes, the absence of long-term physical disorders, and Kloet's self-reported ability to care for her children and perform common household tasks as inconsistent with Kloet's claims that she suffered from a disabling condition. (*Id*.)

The ALJ found that Kloet was unable to perform any of her past relevant work. (R. 25.) However, based on his RFC finding, he concluded that there were a significant number of available jobs in the national economy that Kloet could perform. (*Id*.) Representative occupations included mailroom clerk, cleaner/maid, and office helper. (*Id*) Based on this conclusion, the ALJ found that Kloet had not been under a disability from the time of her alleged initial onset date through the decision and therefore denied her claim for benefits. (R. 26.)

# DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4) (2008).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir.1992). A negative answer at any step, other than at step 3, precludes a finding of disability. Id. The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863 , 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its own judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 498 F.3d 630, 634

(7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Kloet makes three arguments in support of her appeal from the ALJ's decision: (1) the ALJ failed to give adequate weight to the opinion of Kloet's treating psychiatrist, Dr. Penepacker; (2) the ALJ should not have relied on the opinion of the ME who testified at Kloet's hearing; and (3) the ALJ erred in his assessment of Kloet's RFC given the severity of Kloet's mental and physical impairments.

#### A. **Dr. Penepacker's Opinion**

Kloet's first argument is that the ALJ erroneously dismissed Dr. Penepacker's opinion that she could not sustain competitive, full-time employment due to her emotional instability. Because the ALJ only gave cursory attention to Dr.

11

Penepacker's notes and did not discuss how much weight was given to Dr. Penepacker's opinions, and instead simply stating that there was no support for those opinions, Kloet argues that the ALJ's decision should be remanded.

Treating physicians' opinions are typically given more weight than evidence from other sources because they "provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). "If an ALJ does not give a treating physician's opinion controlling weight, [Social Security] regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527 (d)(2)).

Dr. Penepacker opined that Kloet suffered from extreme difficulties maintaining social functioning, persistence, and pace, and could not work 40 hours per week. (R. 2450–51.) The ALJ's opinion offers little analysis of Dr. Penepacker's opinion, stating only that the preceding documentary evidence of Kloet's psychiatric treatment in the record "offers little support for [Dr. Penepacker's] opinion." (R. 23.) The ALJ did not offer any additional information as to what weight was given to the opinion, despite Kloet's long treatment history with Dr. Penepacker. Although the ALJ's opinion cites a set of records which indicate normal psychiatric visits, it omits

other records indicating that Kloet's problems may have been more pronounced. For example, on September 2, 2008, Dr. Penepacker's notes report that she had harmed herself and had thoughts of suicide. (R. 1341.) During the same visit, the records note daily anxiety and panic attacks "a couple of times a week." (R. 1342.) The ALJ also omitted self-reporting by Kloet to treating mental health professionals suggesting more severe issues than the standard language in mental status examinations indicates. (R. 1366, 2274–76.) While these notes are not necessarily dispositive of the severity of Kloet's ailments, the ALJ should not have simply ignored them in favor of evidence which supported his final conclusion. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider 'all relevant evidence.'") The ALJ's selective examination of Kloet's mental health records and his failure to analyze evidence favoring a finding of disability was in error.

On remand the ALJ should consider the entirety of the Dr. Penepacker's treatment notes, including those which support a finding that Kloet is unable to work. Additionally, the ALJ should explicitly state what weight is given to Dr. Penepacker's opinions, with adequate consideration given to factors such as "the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed" as required by the regulations. *Moss,* 555 F.3d at 561.

B.  **Medical Expert Testimony**

Kloet believes that the ALJ should not have relied on the ME's testimony from her hearing in reaching his conclusions regarding her ability to work. Kloet argues that the ALJ should have stated what parts of the ME's testimony she was relying on and how much weight that testimony was afforded. She further points out that the fact that the ME was not a treating physician and never examined her, and instead relied on evidence in the record, and that it was therefore impossible for the ME to produce an accurate assessment of her symptoms.

The ALJ found that, "[b]ased on medical expert testimony, while claimant demonstrates moderate limitations on activities of daily living, social function, and mild to moderate limitations in concentration, persistence and pace, she has not sustained any episodes of decompensation." (R. 22.) The ALJ's use of the ME's opinion in reaching this conclusion was not erroneous because he coupled his reliance on the ME's testimony with medical evidence presented in the record. To the extent that the ALJ used the ME's testimony to draw conclusions concerning Kloet's RFC, that testimony only corroborated the "totality of the evidence" presented. (R. 25.) *See also Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (finding that the ALJ reasonably relied on the medical expert's RFC determination where medical evidence in the record supported that finding). Furthermore any problematic reliance on the ME's testimony was harmless error given the ALJ's recitation of medical evidence which independently supported both conclusions.

## C. Kloet's RFC

Kloet asserts that the ALJ's RFC assessment concluding that she had the capacity to perform "simple, unskilled light work" was erroneous because the ALJ failed to consider her back and neck pain, her chronic headaches, her hip deformities, and her obesity.

The ALJ committed no error with regard to his assessment of Kloet's RFC. The decision discusses the limited nature of Kloet's headaches and back pain, (R. 22–24,) as well as successful procedures that Kloet underwent to treat her hip problems. (R. 24.) Moreover, Kloet did not make the claim before the ALJ that she was limited by her obesity, and the ALJ reasonably relied on reports from physicians who were aware of Kloet's weight and her other ailments, rendering any omission of Kloet's obesity from the decision harmless error. *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) ("Although the ALJ did not explicitly address Prochaska's obesity, he specifically predicated his decision upon the opinions of physicians who did discuss her weight . . . .") Thus, the ALJ adequately evaluated all relevant medical evidence in determining Kloet's RFC.

## CONCLUSION

For the foregoing reasons, Plaintiff Sheila Kloet's motion for summary judgment [Doc. No. 11] is granted in part and denied in part. The Government's motion for summary judgment [Doc. No. 19] is denied. The Court finds that this matter should be remanded to the Commissioner of Social Security for further proceedings consistent with this order.

**SO ORDERED.**                    **ENTERED:**

**DATE:   April 29 , 2014**

**HON. MARIA VALDEZ**

**United States Magistrate Judge**